IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BRENDA KEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:04cv974-C |
| ) | (WO) |
| JO ANNE B. BARNHART, ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff, Brenda Key ("Key"), applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. Key then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. § 405 (g) and § 1631(c)(3). Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

parties have consented to entry of final judgment by the United States Magistrate Judge. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. § 404.1520, §416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3)  Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. Administrative Proceedings

Key was 49 years old at the time of the hearing before the ALJ. (R. 232.) Key's prior work experience includes working as a construction runner, sewing machine operator, and assembly worker. (R. 83, 233-34.) Key alleges that she became disabled due to migraine headaches on June 30, 1998. (R. 60.) The ALJ found that Key suffers from a severe impairment of migraine headaches. (R. 16.) Next, the ALJ determined that Key was able to perform light exertional work through September 30, 2001, the last day on which she qualified for disability insurance benefits. (R. 17.) Specifically, the ALJ found that Key was

able to perform her past relevant work as a sewing machine operator, construction runner, and assembly worker. (R. 17.) Accordingly, the ALJ concluded that Key was not disabled. (*Id.*)

### IV. The Plaintiff's Claims

As stated by Key, she presents the following issues for the court's review:

1. Whether the ALJ erred by failing to address Ms. Key's carpal tunnel syndrome, an impairment which further limits Ms. Key's ability to perform basic work activities.

2. Whether Ms. Key's residual functional capacity, as found by the ALJ, is not based on substantial evidence.

3. Whether the ALJ failed to properly apply the pain standard.

4. Whether the ALJ erred by solely relying on the medical vocational guidelines in the presence of non-exertional impairments which cause limitation of function.

(Doc. # 12 at 1.)

### V. Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability, *e.g.*, the testimony of the claimant and her family or friends; and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983).

### A.  The Pain Analysis

Key contends that the ALJ failed to properly evaluate her subjective complaints of pain.  The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry,* 782 F. 2d at 1553.

The Commissioner must consider a claimant's subjective testimony of pain if she finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain.  *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553. Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Commissioner has, as a matter of law, accepted the testimony as true.  This standard requires that the articulated reasons be supported by substantial reasons.  If there is no such support, the testimony must be accepted as true.  *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

The medical evidence demonstrates that, prior to the expiration of Key's disability insurance in September 2001, Key suffered from migraine headaches.  For example, between

October 22, 1999, and February 27, 2001, Key was diagnosed as suffering from migraine headaches and received treatment from physicians at the Geneva Medical Group. (R. 137-143.) In addition, Key was treated by a chiropractor for her complaints of headaches at various times between August 31, 1996, and July 22, 2001. (R. 198-11, 201, 205-07, 212.) Therefore, Key meets the first prong of the pain standard.

However, the ALJ found that Key's testimony of disabling pain was not credible because "there are no significant ongoing treatment records that would corroborate the claimant's reported symptoms and no objective findings that would support her allegations of being totally disabled through her date of last insurance, September 30, 2001." (R. 16.) Substantial evidence in the record supports the ALJ's finding that the medical records are not consistent with Key's allegations that she suffered disabling pain prior to expiration of her disability insurance. Although the medical records indicate that Key received treatment from a chiropractor prior to September 2001, Key often reported that her headache pain had decreased or that her headaches had resolved on their own. (R. 207-212, 216-219, 224.) For example, on October 2, 1996, Key reported that she suffered from a "bad HA Sunday better today." (R. 209.) On November 4, 1996, Key also reported that she suffered a "slight HA this morning, but it went away." (R. 207.) On the few occasions that Key reported suffering severe headaches, she informed the chiropractor that her headache pain decreased after receiving an adjustment or pain shot. For instance, on June 25, 2001, Key indicated that her headache pain decreased after she received an injection. (R. 199.)

The medical records further demonstrate that Key infrequently received treatment

from her treating physician between her alleged onset date, June 30, 1998, and the date she was last insured, September 30, 2001. It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove a claim of disability.  *See* 20 C.F.R. § 404.1512(c); *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.").  Key first presented to a physician at the Geneva Medical Group on October 22, 1999, with complaints of migraine headaches and received a prescription for Imitrex, Esgic, and Phenergan.[4]  (R. 143.)  Over eight months later on August 10, 2000, Key returned to the Geneva Medical Group complaining of headaches and neck pain.  (R. 141-142.)  Dr. Kurt Kraft, a general practitioner, prescribed Inderal and Imitrex to treat Key's migraine headaches.  (*Id*.)  On December 8, 2000, Key complained of suffering from migraine headaches for approximately one week.  (R. 140.)  She reported that an Imitrex injection gave her temporary relief but that her headache had returned.  (*Id.*)  She was diagnosed as suffering from a migraine headache and acute sinusitis. (*Id*.)  She was administered an injection of Phenergan and Toradol for treatment of her migraine headache and given Bupap for temporary relief of her sinus headache.  (*Id*.)  On February 27, 2001, Key presented to Dr. Kraft with complaints of left shoulder pain and left upper arm pain radiating down her hand. (R. 137.)  She was diagnosed as suffering from migraine headaches

---

[4] The medical records do not indicate the number of refills or amount of medicine prescribed during Key's visits to the Geneva Medical Group on October 22, 199, August 10, 2000, or December 8, 2000.

and carpal tunnel syndrome and prescribed Inderal and Imitrex.[5] (R. 138-139.) Thus, the ALJ's determination that the medical records do not establish that Key received ongoing treatment for a disabling condition and that there are no objective findings that would support Key's allegations of being disabled through September 30, 2001, is supported by substantial evidence.

The ALJ considered that Key's underlying condition was capable of giving rise to some pain; however, she concluded that Key's headaches were not so severe as to give rise to the disabling pain as alleged prior to September 30, 2001. The ALJ has discretion to discredit a claimant's subjective complaints as long as she provides "explicit and adequate reasons for his decision." *Holt*, 921 F.2d at 1223. A reviewing court will not disturb a clearly articulated credibility finding where there is substantial evidence in the record to support the finding. *See Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). The ALJ's reasons for discrediting Key's testimony of disabling pain were both clearly articulated and supported by substantial evidence. After a careful review of the record, the court concludes that the ALJ properly discounted Key's testimony of pain.

Key also asserts that the ALJ failed to properly apply the pain standard because she did not consider evidence that she suffers from cervical fibromyalgia with features of retrocollis, and cervical dystonia, as well as medical records demonstrating that she

---

[5] Specifically, Key was prescribed a box of 4 Imitrex injections with 5 refills. She was also prescribed 90 capsules of Inderal with 5 refills. (R. 138.)

continued to suffer from migraine headaches after expiration of her disability insurance. The medical records demonstrates that, on March 3, 2003, Dr. Robert F. Allen, a neurologist, diagnosed Key as suffering from cervical fybromyalgia with features of retrocollis. (R. 153.) On May 27, 2003, July 29, 2003, and October 8, 2003, Key also received injections for cervical dystonia. (R. 179-181.) Additionlly, at various times after September 2001, Key continued to receive treatment for migraine headaches. (R. 109-111, 118, 124-132, 139, 152-53.) Thus, the objective medical evidence and findings indicate that Key's additional episodes of migraine headaches and her diagnoses of cervical fybromyalgia and cervical dystonia occurred after expiration of her disability insurance. The court therefore concludes that the ALJ did not err in failing to consider objective evidence indicating that Key suffered from cervical fybromyalgia, cervical dystonia, and migraine headaches after September 30, 2001.

### B. Vocational Expert

Key asserts that the ALJ failed to question a vocational expert regarding her non-exertional limitations. Key misunderstands the sequential evaluation process. The ALJ truncated the sequential evaluation process at step four by concluding that Key could perform her past relevant work as a sewing machine operator prior to September 30, 2001. If Key could return to her past relevant work prior to expiration of her disability insurance, any failure on the part of the ALJ to ask a vocational expert to consider whether Key's medical conditions affected her ability to work is of no consequence. Vocational factors are not considered at step four of the sequential evaluation process. 20 C.F.R. § 416.960(b). *See also*

*Lucas v. Sullivan*, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990) (vocational expert testimony is not required at step four to evaluate a claimant's ability to perform past relevant work).

### C. Carpal Tunnel Syndrome

The remaining issues relate to Key's assertion that the ALJ ignored evidence indicating that she suffers from carpal tunnel syndrome. First, Key asserts the ALJ failed to consider her carpal tunnel syndrome individually or in combination with her other impairments. (Doc. # 12 at 5.) In addition, she contends that the ALJ erred in determining that her limitations resulting from carpal tunnel syndrome would prevent her from returning to her past relevant work because the Dictionary of Occupational Titles indicates that sewing machine operators must be able to handle small objects by using their fingers and hands to guide parts under a needle and draw thread and the Merck Manual provides that sufferers of carpal tunnel syndrome should avoid activities or jobs that require repetitive flexion and extension of the wrist. (*Id.*, at 6-7.) Finally, Key asserts that the ALJ's residual functional capacity assessment is not based on substantial evidence because she ignored evidence indicating that she suffers from carpal tunnel syndrome. (*Id.*, at 8-9.)

This court cannot conclude that the ALJ's failure to discuss medical records indicating that Key was once diagnosed with carpal tunnel syndrome was in error. There is only one reference to a diagnosis of carpal tunnel syndrome in the medical records.[6]  (R. 137-139.)

---

[6] In her brief, Key asserts that medical records demonstrating that she reported aching and tingling in her left hand to her chiropractor on July 22, 2002, and May 23, 2003, establish that she continued to suffer from carpal tunnel syndrome. Although these medical records demonstrate that Key reported suffering from some pain in her left hand, there is no reference to her receiving treatment for carpal tunnel syndrome on July 22, 2002, or May 23, 2003. (R. 161, 196.) In fact, the record demonstrates that, on May 23, 2003, Key

Specifically, on February 27, 2001, Dr. Kraft diagnosed Key as suffering from carpal tunnel syndrome and recommended that she be referred to an orthopedic specialist. (R. 138-139.) Nothing in the record indicates that Key pursued treatment by an orthopedic specialist for her complaints of carpal tunnel syndrome. Moreover, Key first alleged that she was unable to work due to carpal tunnel syndrome in her brief to this court. (Doc. # 12.) Key did not allege at any point in her disability report or during the hearing before the ALJ that she suffered from carpal tunnel syndrome. (R. 59, 228-256.) Therefore, the court concludes that, at this late date in the proceedings, Key's assertion that the ALJ failed to discuss her carpal tunnel syndrome in his analysis is unavailing.

## VI. Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled. The court will enter a separate, final judgment affirming the Commissioner's denial of benefits.

Done this 26th day of July, 2005.

　　　　　　　　　　　　　　　　/s/Charles S. Coody　　　　　　　
　　　　　　　　　　　　　　　CHARLES S. COODY
　　　　　　　　　　　　　　　CHIEF UNITED STATES MAGISTRATE JUDGE

---

reported that her injury may have occurred when she was holding the reins of a horse approximately four weeks before her appointment. (R. 196.)